**SCHERING CORPORATION and Biogen, Inc., Plaintiffs,**

v.

**AMGEN, INC., Defendant.**

**Civ.A. No. 96–587–GMS.**

United States District Court, D. Delaware.

Jan. 10, 2001.

Steven J. Balick, Steven T. Margolin, Ashby & Geddes, Wilmington, DE, Gerald Sobel, Aaron Stiefel, Daniel DiNapoli, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, for Plaintiffs, of counsel.

Richard K. Hermann, Blank, Rome, Comisky & McCauley LLP, Wilmington, DE, John J. McDonnell, Daniel A. Boehnen, Grantland G. Drutchas, McDonnell Boehnen Hulbert & Berghoff, Chicago, IL, D. Dennis Allegretti, Burns & Levinson LLP, Boston,

MA, Stuart L. Watt, Robert Cook, Monique Cordray, Craig Crandall, Amgen, Inc., Thousand Oaks, CA, for Defendant, of counsel.

### MEMORANDUM OPINION

SLEET, District Judge.

## I. INTRODUCTION

The defendant in this case, Amgen, Inc. ("Amgen") seeks leave to file a motion for attorneys' fees and to recoup costs against the plaintiffs, Schering Corporation and Biogen, Inc (collectively "Schering") arising from a judgment entered in its favor by the Honorable Murray M. Schwartz (D.I.231). Amgen filed both a Bill of Costs pursuant to Local Rule 54.1 (D.I.238) and a Motion for Renewed Leave to File a Motion and Brief for Attorney's Fees (D.I.239) on September 6, 2000. Schering raises the following objections (1) Amgen's motion regarding attorneys' fees was untimely filed and (2) Amgen is not entitled to payment of certain costs. The court will grant Amgen's motion because it was not untimely and will grant Amgen's bill of costs in part.

## II. STATEMENT OF FACTS

The following is a brief history of the proceedings.[1] On February 3, 1999, Judge Schwartz entered judgment in favor of Amgen on Schering's infringement claim, dismissed as moot Amgen's counterclaims, denied Amgen's motion for summary judgment as moot and denied Amgen's motion for attorneys' fees "with leave to renew at the conclusion of Schering's currently contemplated appeal."[2] Schering subsequently filed an appeal with the Federal Circuit.

1. Judge Schwartz's opinion disposing of the case contains a lengthy discussion of the procedural background. *See Schering Corporation, et al. v. Amgen, Inc.*, 35 F.Supp.2d 375 (D.Del.1999), *aff'd*, 222 F.3d 1347 (Fed.Cir.2000).

2. Schering advocated this course of action so that it could immediately appeal Judge Schwartz's construction of one of the patent claims. In his opinion, Judge Schwartz discusses how the proposed appeal would impact the course of the litigation.

3. The court expresses no opinion on the merits of any attorneys' fees motion.

The Federal Circuit affirmed Judge Schwartz's judgment of noninfringement on August 1, 2000 and entered a Judgment and Mandate on August 22, 2000.

## III. DISCUSSION

### A. Amgen's Motion For Renewed Leave to File Motion and Brief for Attorneys' Fees

Schering's arguments regarding untimeliness fail for two reasons. First, given the procedural posture of the case, denying Amgen the ability to file a motion for attorneys' fees would contravene the intent of Congress expressed in Fed.R.Civ.P. 54(d)(2)(B). Second, even if Amgen were held to the time requirements of Rule 54(d)(2)(B), the court would exercise its discretion and enlarge Amgen's time to file a fee motion pursuant to Fed.R.Civ.P. 6(b). Therefore, the court will grant Amgen's motion.[3]

### 1. Rule 54(d)(2)(B)

Rule 54(d)(2)(B) governs the filing of motions for attorneys' fees.[4] Schering argues that Amgen's motion is untimely since it was filed more than 14 days after the entry of judgment and mandate by the Federal Circuit. According to Schering, Amgen had until September 5, 2000 to file a motion for attorneys' fees and it missed the deadline by one day. Therefore, Schering argues, Amgen's motion should be denied as futile. In response, Amgen contends that it already made a motion for fees and that Judge Schwartz never specified a deadline for filing a renewed motion for fees.[5]

4. Rule 54(d)(2)(B) states, "[u]nless otherwise provided by statute or order of the court, the motion must be filed and served no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought. . . ."

5. It is clear that Judge Schwartz's order constituted a judgment upon which a fee motion could be based. *See* Fed.R.Civ.P. 54(a) (stating that a "judgment . . . includes a decree and any order from which an appeal lies"). However, the rule is silent regarding whether an affirmance by an appellate court is a final judgment which re-

Since the 14 day requirement is not mandatory, the court must examine the rationale behind Rule 54(d)(2)(B) in deciding whether to order strict compliance.[6] Prior to 1993, Rule 54 did not specify a time limit on claims for attorneys' fees. The rule was changed, however, to ensure that parties and the court would not be surprised with fee claims long after the conclusion of a case. According to the 1993 Advisory Committee Notes, "[54(d)(2)(B) ] provides a deadline unless the court or a statute specifies some other time. One purpose of this provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed."

Schering had ample notice that Amgen was going to file a second motion for attorneys' fees. First, Amgen's previously filed motion was dismissed without prejudice with leave to re-file at the conclusion of Schering's appeal. Second, on August 29, 2000, Amgen told Schering that it was planning to file a motion for attorneys' fees.[7] Therefore, denying Amgen's motion on strictly procedural grounds would appear to contravene the spirit of Rule 54(d)(2)(B). *See Romaguera v. Gegenheimer*, 162 F.3d 893, 895–96 (5th Cir. 1998), *clarified per curiam*, 169 F.3d 223 (1999) (holding that motion for attorneys' fees filed 343 days after final judgment merely served to remind court of necessity of holding hearing since district court had already explicitly acknowledged fee request in

final order, thereby satisfying Congress' intended purpose in Rule 54(d)(2)(B)); *Jones v. Central Bank*, 161 F.3d 311, 312, n. 1 (5th Cir.1998) (finding that district court did not abuse its discretion by accepting fee motion on 15th day where defendant had prior notice that plaintiff might seek attorneys' fees) (citing cases); *Anderson v. Ford Motor Co.*, Civ.A.No. 96–CV–913, 1997 WL 158133, at *1 n. 1 (E.D.Pa. Apr. 1, 1997) (refusing to apply Rule 54(d)(2)(B) deadline where settlement agreement provided for court's determination of appropriate attorneys' fees); *Contractors Assoc. of Eastern Pennsylvania, Inc. v. City of Phila.*, Civ.A.No 89–2737, 1996 WL 355341, at *3–*4 (E.D.Pa. June 20, 1996) (declining to apply Rule 54(d)(2)(B) deadline when "counsel announced at a[n earlier] hearing that he intended to file a motion for an interim award of attorney's fees").

### 2. Rule 6(b)(2)

Even if the court found that Amgen violated both the letter and the spirit of Rule 54(d)(2)(B), the court would exercise its discretion to extend the time limit to file a motion for attorneys' fees.[8] *See* Fed.R.Civ.P. 6(b)(2) (stating that "the court for cause shown may at any time in its discretion … upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect"). Although Amgen did not specifically request additional time to file

triggers the 14 day requirement under Rule 54(d)(2)(B). The drafters of Rule 54(d)(2)(B) explicitly reserved the question of the time for re-filing after an appeal stating, "[i]f an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, *directing under subdivision (d)(2)(B) a new period for filing after the appeal as been resolved.*" Fed.R.Civ.P. 54, Advisory Committee Notes, 1993 Amendments (emphasis added). Since Judge Schwartz did not specify a specific time limit for re-filing, it is unclear whether the 14 day limit applies. The court declines to decide whether the 14 day time limit applies in this case since there are other, clearer grounds on which to base its decision.

**6.** As one court noted, "[t]he purpose of Rule 54(d)(2)(B) is to provide the opposing party and the court with notice of the motion for fees … [t]hat purpose is best effectuated by applying the

[14 day deadline] … *in this case.*" *Hardin, et al.v. Southeastern Pa. Transp. Auth.*, Civ.A.No. 91–7434, 1998 WL 54713, at *4 (Jan. 6, 1998) (emphasis added).

**7.** According to Schering's brief, Amgen asked for consent for an extension of time to file its motion. Schering refused, in part, because it felt the motion "would be an enormous waste of the resources of the Court [sic] and the parties." Although Schering was within its rights in refusing to consent to an extension, the court has not been presented with the merits of any such claim. Therefore, any argument regarding the merits is premature.

**8.** Although Rule 6(b)(2) enumerates certain instances where the court ordinarily cannot extend time constraints, Rule 54(d)(2)(B) is not included in the list. *See* Fed.R.Civ.P. 6(b); *see also Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir.1996).

pursuant to Rule 6(b), its motion can be construed as such since it seeks leave of the court to file a further motion and brief.[9]

■ Excusable neglect is an equitable and elastic concept whereby the court takes into account all the relevant circumstances surrounding the delay. Pertinent factors include: (1) the danger of prejudice to the nonmovant, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, (4) whether the movant acted in good faith, (5) whether the inadvertence was the result of professional incompetence such as ignorance of the rules of procedure, (6) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court and (7) a complete lack of diligence. See Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); Dominic v. Hess Oil V.I. Corp., 841 F.2d 513, 517 (3d Cir.1988).

■ Since the determination of excusable neglect is, at root, an equitable one, the court is free to weigh the aforementioned factors as it sees fit. See id. First, there is nothing in the record to indicate that Schering was prejudiced in any way by Amgen's one day delay in filing its motion.[10] Second, any delay to the judicial proceedings was slight and certainly not unreasonable. Third, there is

no record evidence that Amgen acted in bad faith by filing late. On the contrary, Amgen's argument regarding its obligations is plausible in light of Judge Schwartz's order.[11] Finally, the court does not find that Amgen's actions rise to the appropriate level of ignorance or lack of diligence required to deny its request for an extension.[12] See Sugarbaker v. SSM Health Care, 187 F.3d 853, 855–56 (8th Cir.1999) (upholding district court's finding of excusable neglect when movant filed motion for attorneys' fees one day late, nonmovant was not prejudiced, delay did not adversely impact judicial proceedings and there was no reason to doubt movant's good faith).

## B. Amgen's Bill of Costs

As the prevailing party, Amgen is entitled to costs. See Fed. R. Civ. P 54(d)(1); see also Reactive Metals and Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1585–86 (Fed.Cir. 1985) (finding that defendant in patent infringement case who prevailed on the merits was entitled to award of costs unless court otherwise directs). Pursuant to Local Rule 54.1, Amgen timely filed a bill of costs.[13] Schering filed a limited objection to certain marshal fees, deposition costs, and fees for disbursement and printing. Given the lack of guidance from Local Rule 54.1 and the course of this litigation, the court, rather

---

9. Schering argues that Amgen attempted "to sneak one past the court" since it requested leave to file a fee motion rather than file a motion itself. Since Judge Schwartz's order already granted Amgen leave, Schering maintains, Amgen should not have requested permission to file a renewed motion. Although filing a fee motion may have been preferable to the action actually taken, Amgen's greater power to file a motion includes the lesser power to ask the court for permission. In any event, the court declines to deny Amgen's motion on such a technicality.

10. Where a delay in adhering to a court-ordered deadline is not long and causes little prejudice to the opposing party, a court may opt to excuse the lateness. See 4A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1165 2d ed. (1999).

11. As stated above, the application of Rule 54(d)(2)(B) is unclear in this case. See supra note 5 and accompanying text.

12. Additionally, although waiver is not an articulated factor, the court notes that Schering has failed to raise a timeliness objection on other occasions in this case when Amgen filed a brief one day past the deadline contemplated by Local Rule 7.1.2. For example, Amgen's reply brief on its motion for attorneys' fees was due on November 30, 1998. Amgen filed its brief on December 1, 1998, however. Despite Amgen's literal untimeliness, Schering did not ask the court to strike the offending brief and presumably suffered no prejudice as a result.

13. Even under Schering's logic, Amgen had ten days from the date after the issuance of the mandate from the Federal Circuit to file a bill of costs. According to Rule 6(a), Saturdays, Sundays, and Labor Day are not included in the calculation. Therefore, Amgen had until September 6, 2000 to file its bill of costs with the court.

than the Clerk, will decide whether Amgen is entitled to the costs it seeks.[14]

### 1. Marshal Fees

■ Schering objects to the marshal fees for service of subpoenas on the grounds that either the subpoena was quashed or that the third party witness was not deposed. Although the court has discretion in this area, the appropriate inquiry is whether the issuance of the subpoena was reasonable and necessary in light of the facts known at the time of service. *See Movitz v. First Nat'l Bank of Chicago*, 982 F.Supp. 571, 574 (N.D.Ill.1997) (citing cases). Schering must point to specific evidence that it was unreasonable for Amgen to believe that the deposition of the third party witness was necessary. *See id.* In support of its position, Schering maintains that Amgen should not be awarded marshal fees for subpoenas served but subsequently quashed.[15]

■ The court is bound by Judge Schwartz's finding that Amgen's statement that is was only seeking to discover fact testimony from Drs. Ju and Simon was "disingenuous". Judge Schwartz determined that Amgen did not show that it could not get the information it sought from other, willing, experts. In quashing the subpoenas, Judge Schwartz found that Amgen did not establish a "substantial need" for the testimony of Drs. Simon and Ju. Based on Judge Schwartz's comments, the court finds that Amgen could not have reasonably believed that the testimony of Drs. Simon and Ju was necessary at the time it issued the subpoenas. As a result, marshal fees for serving subpoenas on Drs. Ju and Simon shall not be taxed as costs.

The court has less information regarding the subpoena of Dr. Gutterman. Although the District Court for the Southern District of Texas quashed the subpoena, it did not give an explanation of its reasoning. In this absence, the court turns to Fed.R.Civ.P. 45(c)(3)(B) which requires Amgen to show a "substantial need" for Dr. Gutterman's testimony. Apparently, the District Court judge who quashed the subpoena found that Amgen did not meet this standard. Although the showing required under Rule 45(c)(3)(B) is not identical to the test guiding the court's decision on marshal fees, the evidence in the record suggests that the circumstances surrounding Dr. Gutterman's subpoena were similar to those of Drs. Simon and Ju. Extending Judge Schwartz's logic, the court will deny taxation of marshal fees for the service of Dr. Gutterman's subpoena.

■ Although Schering claims that Peter Lengyel and Herbert Weissbach were never deposed, it has not provided the court any evidence that Amgen did not reasonably believe their testimony was necessary at the time of service. Stating that these witness did not testify is not an adequate ground for the court to deny Amgen the fees to which it is entitled. *Cf. Kirby v. United States*, 273 F. 391, 397 (9th Cir.1921), *aff'd*, 260 U.S. 423, 43 S.Ct. 144, 67 L.Ed. 329 (1922) (approving taxation as costs fees of marshal in serving subpoenas even though witnesses did not testify).

### 2. Deposition Costs

■ Schering claims that Amgen's stated cost of $1,263.24 for Dr. Streuli's deposition is "plainly excessive" since it is "substantially beyond the cost of the other depositions." Although Schering may have been charged $681.50 for a "basic unexpedited deposition", Local Rule 54.1(b)(3) allows for the reporter's "reasonable charge" for a deposition. Schering provides the court no basis to find that Amgen's claimed costs were unreasonable nor that Amgen's stated amount was provided in bad faith. As a result, the court finds Amgen is entitled to its stated cost for Dr. Streuli's deposition.

---

**14.** The court will only consider the costs Schering objected to and will order payment of all other, apparently uncontested, costs.

**15.** Judge Schwartz quashed the subpoenas for Drs. Grace Ju and Lee Simon, Civ.A.No. 98–97– MMS, 1998 WL 55944, at *1 (D.Del. Aug. 4, 1998), and the United States District Court in the Southern District of Texas quashed a subpoena for Dr. Jordan Gutterman, Pl. Obj., Ex. B.

### 3. Fees and Disbursements for Printing

#### a. Amgen's Document Production

■ Schering objects to Amgen recovering $23,196.88 for copying documents Schering requested during discovery. The relevant inquiry the court will use to guide its discretion is whether the documents were necessarily obtained for use in the case. *See* 28 U.S.C. § 1920(4) (approving taxation of costs for "[f]ees for ... copies of papers necessarily obtained for use in the case"). Copying documents in response to a discovery request is, by its nature, necessary for use in preparing Schering's case.[16] *See State of Illinois v. Sangamo Constr. Co.*, 657 F.2d 855, 867 (7th Cir.1981) (affirming district court's award of costs for copying pleadings, correspondence, and discovery documents produced to opposing party). Unless Schering now contends that it requested unnecessary documents in prosecuting its case, it is anomalous to argue that such costs do not fall within the ambit of § 1920(4). Certainly, Schering has not adduced any evidence to demonstrate that Amgen's copying costs, as alleged, were unreasonable or unnecessary. Therefore, the court finds that Amgen is entitled to $23,196.88 for costs associated with document production.

#### b. Amgen's Markman Video

■ Amgen's bill of costs identified a $55,494.14 expense incurred in preparing a video to assist the court in advance of the Markman hearing. Schering objects on the grounds that the video was improper and that it is not a taxable cost. The standard the court will apply to direct its discretion is whether the video materially aided Judge Schwartz's understanding of the technological issues in the case. *See, e.g., Appliance Inv. Co. v. Western Electric Co.*, 61 F.2d 752, 756 (2d Cir.1932) (finding that costs are taxable if preparation was necessary for the court to understand what was on the record but would have been incomprehensible to the

inexpert mind); *Emerson v. Nat'l Cylinder Gas Co.*, 147 F.Supp. 543, 545 (D.Mass.1957) (stating that the appropriate test for whether § 1920(4) is whether the item furnished "real assistance" to the court).

Judge Schwartz invited both parties to submit videos to assist the court in understanding the technological issues involved. Schering claims that Amgen's video was "more advocacy than science". It appears from the record that Judge Schwartz agreed with this assessment, at least in part.[17] Since Judge Schwartz eventually watched the video in its entirely, however, he must have found it useful to a certain extent. Given this mixed view of the Amgen video and that the applicable statute and rules are silent on this question, the court will order that only half of the cost of the video, $27,747.10, be taxed under § 1920(4). *Cf. Emerson,* 147 F.Supp. at 544 (awarding 25% of expense of drawings prepared in patent case since they were overly elaborate and repetitious and went beyond court's needs).

### IV. CONCLUSION

Amgen's motion for leave to file a motion and brief for attorneys' fees is not untimely. To hold otherwise would contravene Congress' as expressed in Rule 54(d)(2)(B). Alternatively, Amgen's motion can be construed as a request for an extension of time under Rule 6(d) which the court, in its discretion, will grant. Amgen's bill of costs will be granted with the exception of the above mentioned items. The court will issue an appropriate order in conjunction with its opinion.

---

16. Indeed, Schering probably used at least some of the documents it requested during discovery to prosecute its case.

17. At the Markman hearing, Judge Schwartz stated, "I have mentioned to local counsel that I stopped on [sic] Amgen's video when it became

obvious that it had gone into the adversarial aspect.... Saturday I again reviewed all three videos, and this time I said, I've got to learn as much as I can. I took Amgen's video and went to the end with it. So I have seen the entire video."